ALICIA A.G. LIMTIACO
United States Attorney
FREDERICK A. BLACK
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam  96910
PHONE:  (671) 472-7332
FAX:  (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>HENRY ALVENDIA, et. al.,<br><br>            Defendants. | CRIMINAL CASE NO.  15-00022<br>CRIMINAL CASE NO.  15-00043<br><br>**GOVERNMENT'S LISTING OF DEFENDANTS IN ORDER OF CULPABILITY** |

The Government suggests a May 2016 sentencing date for all of the defendants.  At least one of the defendants, Henry Alvendia, is a witness in a narcotics trial that may not occur until April. His sentence date should occur after his testimony so the court can take into account any cooperation rendered.

The Government provides the following list of the defendants in terms of culpability to aid the court in determining sentencing dates:

**LESS CULPABLE**

1. Defendant **Ken Constantino,** was a Shipping Department Manager, Mariana Express Lines, and an agent for CTSI freight forwarders.  Defendant Constantino was assisting Ruel Valencia with the containers for his retail business.  The Valencias were having difficulty getting their containers inspected so that they could unload their products.  Constantino suggested that Valencia supply the officers with food and drink to make them more cooperative.

Constantino also accepted a $500 cash payment from an undercover employee that the conversation indicated would go to an unidentified customs agent to assist in clearing a container. After his arrest and plea of guilty, Constantino told the federal agent that this money was never passed on to the custom agent.

2. Defendant **Jesus Paulino**, a Guam Customs officer, participated in several conversations with Frank Cruz, his step father, Becky Cruz, an undercover businessman, and an undercover employee about ways to smuggle illegal cigarettes into Guam from the Philippines. Jesus Paulino even asked the undercover businessman to be paid $500 for providing the smuggling ideas. Although Paulino admits to his role in the conspiracy, he never actually received any bribe money from any agent.

3. Defendant **Ruel Valencia**, dba JUNVI Corporation, operated three Guam businesses in Dededo: Valencia Wholesale and Retail (VWR), Valencia Check Cashing Services; and Cabalen's Fast Food (CFF). Valencia was frustrated in getting his containers searched in a timely manner by Guam Customs for his retail business. On or about November 2010, Valencia started supplying drinks, food, and later paid bribes to other government officials. This went on until approximately March 2011, at which time Valencia secured formal permission, by paying a bond to cover taxes, to start bringing cigarettes into Guam legally. The gratuities and bribes came to approximately $37,000.

In May 2011, the FBI and HSI searched the Valencia businesses and seized evidence of his prior activity and approximately $147,000 in cash from his business. Valencia at that time agreed to cooperate with the federal agents to help expose an ongoing corruption by Guam Customs officers and officers from the Guam Department of Revenue and Taxation and Alcohol Beverage Control Compliance. Valencia also chose not to challenge the government's forfeiture of the seized funds.

All of the actions that Valencia performed from May 2011 forward, were performed in his role as an active uncover businessman, using government bribe funding. As such, Valencia is only responsible for any money and valuables paid to Guam government officials which took place from approximately December 2009 through March 2011. But for the 4 year undercover active cooperation of Valencia, and others, it is doubtful that the other 9 defendants' illegal activities could have been exposed and successfully prosecuted.

The government often encourages the public to cooperate to eliminate the corruption that exits in our community. Corrupt public officials get away with their extortion schemes because those that pay them money also commit a crime. A significant factor in Valencia's sentencing should be his decision to cooperate when he did.

4. Defendant **Tommie Pablo,** a Guam Customs Officer**,** in approximately November was one of the initial two customs agents, along with defendant Glenn Crisostomo who accepted drinks and later money from defendant Valencia. Both these agents accepted a significant quantity of fireworks and requested more with the next shipment. When the second shipment of fireworks came into Guam, both Crisostomo and Pablo accepted $1,500 in cash for allowing the fireworks into Guam. Similar amounts of money were received by each defendant as additional containers came in and were inspected. When

confronted with her misdeeds, Pablo, never tried to deny it, but instead immediately told the truth and decided to cooperate with federal law enforcement.

**MORE CULPABLE**

5. Defendant **Glenn Crisostomo**, a Guam Customs Officer, was more proactive than defendant Pablo in requesting money and other assistance from Valencia. On one occasion when Valencia gave Crisostomo a $500 check written to the Treasure of Guam to cover cigarette taxes, Crisostomo returned the check and asked for cash instead. In January 2009, Crisostomo received a $2,170 computer from Valencia. At one point, Crisostomo advised that the Valencias could start bringing in illegal cigarettes.

    Crisostomo received $700 for material for a bathroom renovation and $300 for a hot water heater. At times, Crisostomo would ask for additional funds to help with house repairs and taxes and this request was turned down by Valencia.

6. Defendant **Gerald Salas**, was a Guam Department of Revenue and Taxation and Alcohol Beverage Control (ABC) compliance officer. Salas assisted his supervisor, defendant John Garrido in tasks involving local bar owner, in which bribes were paid for services rendered to Garrido. On July 14, 2009, Salas advised one bar manager that he was leaving for the Philippines on July 24 and that" maybe you can help me out before that."

    Prior to 2010 Salas accepted a round trip ticket to Manila and approximately $500 in cash in exchange for Salas smuggling in three cases of Philippine manufactured cigarettes into Guam. On August 25, 2011, Salas warned Valencia that ABC officers would be initiating a sting operation beginning August 27, 2011, to determine if retailers such as Valencia Wholesale and Retail business were selling cigarettes to minors.

    On June 6, 2012, Salas, for assisting with a business license, received $500 from an undercover employee to cover a plane ticket to the Philippines.

7. Defendant **John Garrido**, was a Supervisor, a Guam Department of Revenue and Taxation and Alcohol Beverage Control compliance officer. From the year 2005, until when he retired about two year ago, Garrido accepted bribes from different bar owners on Guam to assist them with business licenses and employee IDs and later took bribes from defendant Valencia, in relation to the smuggling of cigarettes.

8. Defendant **Becky Cruz**, was the wife of defendant Frank Cruz, and his full partner in relation to smuggling cigarettes into Guam. She personally brought several cases of cigarettes to Guam with her baggage on at least three different occasions. To facilitate her pass through Guam Customs, she would always insure that her husband was on duty at the time she returned to Guam. She, along with her husband, would also borrow money from defendant Valencia and either not pay it back at all or, smuggle cigarettes as trade off to the amount owed.

9. Defendant **Frank Cruz,** was a Lieutenant with the Guam Customs and Quarantine Agency. Between approximately 2010 and 2014, Cruz repeatedly took bribes from defendant Valencia, both before and after Valencia began cooperating with the federal government. At one point, defendant Cruz travelled to the Philippines and received

complementary dental work paid for by defendant Valencia. Cruz received approximately $7,000 for one container shipped in late 2010 in which cigarettes were smuggled in by defendant Valencia. Cruz also borrowed money from Valencia that he never repaid.

10. Defendant **Henry Alvendia,** was a Lieutenant with the Guam Customs and Quarantine Agency. Between approximately 2010 and 2014, Alvendia repeatedly took bribes from defendant Valencia, for allowing containers with smuggled cigarettes to enter Guam. After Valencia began cooperating with the federal government, Alvendia continued to receive funds from Valencia. Alvendia sold counterfeit and other goods to Valencia, from items set for destruction by the Guam Customs and Quarantine Agency. Although these goods were paid for using federal funds, Alvendia believed this money was coming from Valencia himself.

At sentencing the court will have the benefit of a full presentence report (PSR) which will have a more comprehensive account of each defendant's illegal activities. The PSR will also have the personal history circumstances of each defendant, including any health issues. Two defendants have serious medical conditions that could limit the sentencing possibilities for the court.

Following the PSRs and in advance of sentencing, the Government will provide a memorandum that will describe any cooperation, or lack thereof, provided by each defendant.

DATED this 4th day of November, 2015.

        ALICIA A.G. LIMTIACO
        United States Attorney
        Districts of Guam and NMI

By:   /s/ Rosetta L. San Nicolas
       For: FREDERICK A. BLACK
       Assistant U.S. Attorney